UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ENCORE PACKAGING, LLC,

    Plaintiff,

    v.

BENCHMARK INDUSTRIAL INC.,

    Defendant.

No. 25 C 6865

Judge Thomas M. Durkin

## MEMORANDUM OPINION AND ORDER

Encore Packaging, LLC, brings claims related to its failed business relationship with Benchmark Industrial Inc. Benchmark has moved to dismiss for lack of personal jurisdiction. That motion is denied.

## Background

Encore is located in Illinois and it designs and manufactures packaging tools and equipment. Benchmark is located in Ohio and is a supplier of packaging and warehouse equipment.

Encore alleges that Benchmark approached it with news that Amazon intended to begin using recyclable packaging material. Benchmark claimed to have contacts with Amazon who would be interested in purchasing devices for dispensing packing paper as part of this transition. According to Encore, Benchmark suggested that Encore could design and manufacture such a device and Benchmark would market it to its Amazon contacts.

Encore alleges that "Benchmark repeatedly sent high-level employees to Illinois" to meet with Encore employees regarding the Amazon deal. *See* R. 17 at 2. For instance, Encore alleges that in March 2023, a Benchmark employee traveled to Encore's Illinois facility to pick up sample paper dispensing units. *See id.* In July 2023, Benchmark sent an employee to Illinois to view Encore's facilities and discuss the new paper dispensers and the production plans for Amazon. *See id.* This included a visit to Encore's then-current manufacturing facility and its new facility to confirm production capabilities. *See id.* at 3. In August 2023, Benchmark employees, including its President, visited Encore's facility to assess an order that was in progress and discuss production and plans for the Amazon deal. *See id.*

In addition to these visits by Benchmark to Encore in Illinois, Encore alleges that Benchmark communicated with Encore in Illinois "many times over many months" by "phone, email, and text," regarding production of the dispensers and the Amazon deal. *See id.* at 3. Encore also alleges that Benchmark paid it for "the new units and the Amazon business opportunity in this case," while Encore was of course located in Illinois.

## Analysis

"Corporations that reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to personal jurisdiction in the latter state." *North v. Ubiquity, Inc.*, 72 F.4th 221, 225 (7th Cir. 2023) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985)). "In those circumstances, the defendant has manifestly availed himself of the privilege of

2

conducting business in the forum state, so it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." *North*, 72 F.4th at 225 (quoting *Burger King*, 471 U.S. at 473).

That is exactly what Encore alleges occurred here. Benchmark allegedly "reached out" from Ohio to Encore in Illinois with a proposal that induced Encore to design and manufacture a new product. Benchmark then made payments to Encore in connection with the proposed deal and the design and manufacture of the product.

Benchmark largely concedes all of the facts Encore alleges about Benchmark's conduct. Rather than address the totality of its conduct, Benchmark picks apart the allegations and improperly removes them from their context in a misguided attempt to argue that Encore has failed to allege personal jurisdiction.

First, Benchmark argues that "contracting with an out-of-state party alone cannot establish automatically minimum contacts in that other party's home forum." R. 20 at 7 (citing cases). Benchmark notes that Encore "needs something more." *Id.* But that "something more" is Benchmark's frequent communications with Encore in Illinois, and its repeated visits to Illinois specifically to inspect the designs and manufacturing process for the product that was the subject of the parties' deal. Benchmark induced Encore to design and manufacture a product in Illinois and monitored that process over the span of many months. The contention that Encore merely alleges an anonymous contract with Benchmark is contrary to Encore's allegations. Encore clearly alleges that Benchmark knew it was establishing a significant business transaction with a party in Illinois.

Benchmark also argues that its communications with Encore cannot establish personal jurisdiction because, in the personal jurisdiction context, the Seventh Circuit has explained that "email does not exist in any location at all," rather "it bounces from one server to another . . . and it winds up wherever the recipient happens to be at that instant." R. 20 at 8 (quoting *Advanced Tactical Ordnance Sys. LLC v. Real Action Paintball Inc.*, 751 F.3d 796, 803 (7th Cir. 2014)). But *Advanced Tactical* concerned a case where the defendant sent a mass email to many recipients without specific knowledge of where each of those recipients, including the plaintiff, was located. In that case, the "connection between the place where [the] email [was] opened and [the] lawsuit [was] entirely fortuitous." *Advanced Tactical*, 751 F.3d at 803. That is a completely different circumstance from Benchmark's emails and other communications with Encore. Benchmark intentionally sent communications to Encore, for the specific purpose of establishing and monitoring the Amazon deal, knowing that Encore was in Illinois. Such communications are properly a significant part of establishing the Court's personal jurisdiction over Benchmark in this case.

Benchmark concedes that it made payments to Encore "with respect to the claims at issue," but tries to avoid the jurisdictional significance of those payments by arguing that all payments "were made by automated clearing house transfers," such that "the location of the recipient at the time of the payment is just as fortuitous as it is with e-mails or text messages." R. 20 at 8-9. But just as with email communications, the potential uncertainty of the plaintiff's location is not present here where Benchmark knows that Encore is located in Illinois. Encore is not an

individual person with the ability to move on a moment's notice. Rather, Benchmark knew that Encore was designing and physically manufacturing products in Illinois and that Benchmark was paying for those products. Regardless of the form of payment, and the road that payment might travel, its ultimate destination was Illinois.

Just as it must concede that it made payments to Encore, Benchmark does not deny that its employees traveled to Illinois in connection with the design and manufacture of the products at issue. *See* R. 29 at 2 (Benchmark concedes that "there were numerous contacts between Encore and Benchmark in 2023 relating to the production of paper dispensers[.]"). Benchmark, however, argues that "Encore's allegations do not support a claim that any of the three cited visits were material to claims with in the seven counts of the amended complaint." R. 20 at 9. Benchmark contends that "Encore does not show how these visits factored into Benchmark's alleged breaking of promises, breach of purported implied contracts, infringement on claims copyrights, or misappropriation of purported trade secrets." *Id.* According to Benchmark, the "act of picking up paper dispensers, or discussing plans for a venture, forms no part of the elements of the claims brought by Encore. Thus, these acts cannot support a claim that those visits gave rise to Encore's claims." *Id.* at 10.

Benchmark's analysis is simply incorrect. "The venture," as Benchmarks puts it, concerned an alleged promise or contract to purchase products for Amazon, and a related agreement for access to copyrights or trade secrets. In other words, Encore alleges that "the venture" was established through various "agreements" between

5

Benchmark and Encore. Encore's claims concern breach of those agreements. The existence of an agreement (of whatever type) is an element of a claim for a breach of that agreement. Therefore, Encore's various claims for breach of various agreements arise out of or relate to the alleged agreements, or what Benchmark terms "the venture." And furthermore, the actions establishing "the venture" constitute minimum contacts with the forum for jurisdictional purposes, as the Court has already discussed.

Benchmark also argues that even if all of Encore's allegations are true, Benchmark "never expressed . . . an intent [that the design and production work would be performed in Illinois], much less entered in to [sic] a contract, or other sort of promise, that manifested that intent." R. 20 at 11. This, of course, is an assertion that goes to the merits of Encore's claims, which are not at issue on this motion. The fact is that Encore alleges that agreements were formed and were breached. The factual allegations underlying Encore's claims also establish minimum contacts with Illinois, for the reasons the Court has already discussed. Whether discovery ultimately establishes the existence or enforceability of any of the alleged agreements is not relevant to whether Encore's allegations that certain agreements were made and breached constitute a prima facie showing of personal jurisdiction.

Lastly, the Court's assertion of personal jurisdiction in these circumstances is fair and just. Illinois has "a manifest interest in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." *Burger King*, 471 U.S. at 473. That is "all the more true where, as here, a forum resident seeks to

6

recover from a defendant who 'purposefully direct[ed]' [its] activities toward the forum." *Domanus v. Lewicki*, 779 F. Supp. 2d 739, 749 (N.D. Ill. 2011). Five of Encore's seven claims are based on Illinois law. As an Illinois entity, Encore has a strong interest in vindicating its rights under Illinois law in this Court. Any possible burden on Benchmark is minimal, given that "much of litigation activity occurs remotely." *GTY Tech. Holdings Inc. v. Wonderware, Inc.*, 2025 WL 1455762, at *7 (N.D. Ill. May 21, 2025). Benchmark has Illinois counsel, and discovery is well underway here. Judicial efficiency favors remaining here rather than re-filing in Ohio. Benchmark offers no "compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Felland v. Clifton*, 682 F.3d 665, 677 (7th Cir. 2012) (quoting *Burger King*, 471 U.S. at 477).

## Conclusion

Therefore, Benchmark's motion to dismiss [19] is denied. Benchmark's previous motion to dismiss [12] is denied as moot in light of the amended complaint and this superseding motion and decision.

ENTERED:

_____

Honorable Thomas M. Durkin
United States District Judge

Dated: March 19, 2026

7